**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

ROBERT ERVIN HALL,

        Defendant.

No. CR03-3037-LRR
No. C05-3006-LRR

ORDER

      This matter comes before the court on the defendant's motion to vacate, set aside or correct his sentence (Docket No. 106). The defendant's motion was filed pursuant to 28 U.S.C. § 2255.[1] For the following reasons, the defendant's 28 U.S.C. § 2255 motion shall be denied.[2] In addition, a certificate of appealability shall be denied.

---

      [1] If a prisoner is in custody pursuant to a sentence imposed by a federal court and such prisoner claims "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, [the prisoner] may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255. *See also Daniels v. United States*, 532 U.S. 374, 377, 121 S. Ct. 1578, 149 L. Ed. 2d 590 (2001).

      [2] No response from the government is required because the motion and file make clear that the defendant is not entitled to relief. *See* 28 U.S.C. § 2255; Rule 4(b), Rules Governing Section 2255 Proceedings. Similarly, an evidentiary hearing is not necessary. *See id*. *See also Engelen v. United States*, 68 F.3d 238, 240-41 (8th Cir. 1995) (stating district court may summarily dismiss a motion brought under 28 U.S.C. § 2255 without an evidentiary hearing "if (1) the . . . allegations, accepted as true, would not entitle the [movant] to relief, or (2) the allegations cannot be accepted as true because they are
(continued...)

# I. BACKGROUND

On April 24, 2003, the government filed an indictment against another defendant. That indictment did not name the defendant.[3]  On May 23, 2003, the government filed a superseding indictment which charged the defendant on two counts.  Count one charged that, between about 1999 and continuing until June 2002, the defendant and another did knowingly and unlawfully combine, conspire, confederate and agree, with other persons, known and unknown to the grand jury, to commit the following offenses:

> a. Distribution of 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841(b)(1)(A);
>
> b. Distribution of 50 grams or more of actual (pure) methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841(b)(1)(A);
>
> c. Distribution of 500 grams or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841(b)(1)(A);
>
> d. Distribution of 1000 kilograms or more of a mixture or substance containing a detectable amount of marijuana, a

---

(...continued)
contradicted by the record, inherently incredible, or conclusions rather than statements of fact"); *United States v. Oldham*, 787 F.2d 454, 457 (8th Cir. 1986) (stating district court is given discretion in determining whether to hold an evidentiary hearing on a motion under 28 U.S.C. § 2255).

[3] On March 24, 2003, the government filed an indictment in a separate case against the defendant.  *See United States v. Hall*, CR03-3020-LRR (N.D. Iowa 2003).  On June 6, 2003, the government moved to dismiss that indictment.  *Id*.  On June 16, 2003, the court granted the government's motion to dismiss.  *Id*.

Schedule I controlled substance, in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841(b)(1)(A); and

e. Distribution of a mixture or substance containing a detectable amount of 3, 4-methylenedioxy methamphetamine ("MDMA"), commonly called "ecstacy," a Schedule I controlled substance, in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841(b)(1)(C).

The conduct charged in count one of the superseding indictment is in violation of 21 U.S.C. § 846. Count four of the superseding indictment charged that, on or about January 12, 2003, the defendant did knowingly and intentionally possess with the intent to distribute:

a. 50 grams or more of methamphetamine, a Schedule II controlled substance; and

b. a mixture and substance containing a detectable amount of marijuana, a Schedule I controlled substance.

The conduct charged in count four of the indictment is in violation of 21 U.S.C. § 841(a)(1), 21 U.S.C. § 841(b)(1)(A) and 21 U.S.C. § 841(b)(1)(C).

On June 23, 2003, the defendant filed a motion to suppress. On June 23, 2003, the government filed a resistance to the defendant's motion to suppress and a supplemental resistance. On June 24, 2003, the defendant filed a motion to sever. On June 26, 2003, the government filed a resistance to the defendant's motion to sever.

On June 27, 2003, the government filed a second superseding indictment against the defendant. The counts pertaining to the defendant remained the same.

After conducting an evidentiary hearing regarding the defendant's motion to suppress, Chief Magistrate Judge John A. Jarvey filed a report and recommendation in which he recommended that the defendant's motion to suppress be denied. On July 9,

2003, the defendant filed objections to the report and recommendation which Judge Jarvey filed on July 2, 2003.

On July 22, 2003, the defendant filed a notice of his intent to plead guilty. On July 23, 2003, the court entered an order which directed the clerk's office to satisfy as moot the defendant's motion to suppress and motion to sever upon the entry of his guilty plea. On July 30, 2003, the defendant appeared before Judge Jarvey for a change of plea hearing. At such hearing, the defendant pleaded guilty to count one of the second superseding indictment. On the same day, Judge Jarvey entered a report and recommendation that a United States District Court Judge accept the defendant's plea of guilty. On August 14, 2003, the court entered an order adopting the report and recommendation pertaining to the defendant's guilty plea.

On December 29, 2003, the clerk's office docketed the defendant's Pre-Sentence Investigation Report ("PSIR"). The PSIR included letters from the government and the defendant. The government's letter indicated it did not have any objections to the PSIR. The defendant's letter, however, raised multiple objections, which included: (1) whether his offense level should be reduced by two levels because he is safety-valve eligible; (2) whether his offense level should be reduced by two levels because he did not have a large role in the offense; and (3) whether his criminal history should be reduced by one point because the prior conviction for possessing drug paraphernalia constitutes relevant conduct.

On January 14, 2004, the government filed a sentencing memorandum. In its sentencing memorandum, the government, among other things, addressed the defendant's safety-valve eligibility argument. The government asserted the defendant did not qualify for a two-level reduction pursuant to U.S.S.G. § 2D1.1(b)(6) because he had more than one criminal history point, that is, failed to meet the first criterion of U.S.S.G. § 5C1.2. The government maintained the PSIR correctly determined that the defendant had two

criminal history points–one for a 1997 conviction for theft in the fifth degree and one for a 1997 conviction for possession of drug paraphernalia.

In light of the defendant's assertion that the latter conviction should be included as part of his relevant conduct rather than his criminal history, the government turned to U.S.S.G. § 4A1.1, U.S.S.G. § 4A1.2 and U.S.S.G. § 1B1.3. Concerning the proper analysis, the government stated:

> "Conduct is not part of the offense of conviction when the conduct is a severable, distinct offense." *United States v. Blumberg*, 961 F.2d 787, 792 (8th Cir. 1992). "To make this factual determination, the district court should consider several factors, including temporal and geographical proximity, common victims, and a common criminal plan or intent." Blumberg, 961 F.2d at 792. *Accord, United States v. Torres-Diaz*, 60 F.3d 445, 448 (8th Cir. 1995); *United States v. Copeland*, 45 F.3d 254, 256 (8th Cir. 1995). *See also United States v. Stone*, 325 F.3d 1030, 1032 (8th Cir. 2003 (noting that the factors also include whether the prior conviction is used to prove the instant offense). [. . .] The temporal relationship is an important factor, especially when the charge of conviction involves conspiracy to distribute controlled substances. When a defendant is charged with conspiracy to distribute controlled substances, any conduct involving controlled substances during the time period of the charged conspiracy is deemed relevant conduct because those drug quantities can be considered in determining the defendant's base offense level for the offense of conviction. *Untied States v. Weiland*, 284 F.3d 878, 882-83 (8th Cir. 2002). On the other hand, conduct occurring outside of the time period of the charged conviction is not deemed relevant criminal conduct. *Id*. at 188 (defendant received a criminal history point for a drug offense after the dates of the charged conspiracy, but did not receive criminal history points for drug convictions during the time period of the charged conspiracy).

Given that law, the government stated the following:

> 1) the defendant possessed personal drug use paraphernalia on August 25, 1997 or approximately one and one-half years before the beginning date of the charged drug conspiracy;

> 2) the defendant possessed personal drug use paraphernalia in Cerro Gordo County, Iowa while the charged drug conspiracy involved shipments of drugs from the southwest part of the United States to Minneapolis, Minnesota and shipments of a portion of those drugs to the Cerro Gordo County area and other locations in Iowa;

> 3) the defendant's conviction for possession of personal drug use paraphernalia did not serve as a basis for obtaining any search warrants, arrest warrants or indictments;

> 4) the defendant's conviction for possession of personal drug use paraphernalia did not become part of the indictment, plea agreement or the section in the PSIR pertaining to offense conduct;

> 5) the defendant's possession of personal drug use paraphernalia is in no way related to the offense of conviction, that is, the conspiracy to distribute methamphetamine, cocaine, marijuana and ecstacy;

> 6) the defendant's conviction for simple possession of drug use paraphernalia does not qualify as relevant conduct because a conviction consistent with personal use is not in itself preparation or furtherance of a conspiracy to distribute methamphetamine, cocaine, marijuana and ecstacy; and

> 7) the defendant's conviction for possession of personal drug use paraphernalia is properly treated as a prior conviction rather than relevant conduct because such treatment furthers the purposes of sentencing, that is, a defendant with a record of prior criminal behavior is more culpable than a first offender and thus deserving of greater punishment.

In sum, the government maintained the defendant's possession of drug paraphernalia does not constitute part of the same course of conduct or common scheme or plan as the offense of conviction, and, consequently, the PSIR properly scored the defendant's criminal history.

On January 21, 2004, the defendant, through counsel, filed a sentencing memorandum. In his sentencing memorandum, the defendant, among other things, objected to the recommendation that one criminal history point be assessed for the 1997 possession of drug paraphernalia conviction. The defendant claimed the conduct associated with the possession of drug paraphernalia conviction occurred during the course of the charged conspiracy, and, therefore, it should be counted as relevant conduct. In support of his position, the defendant stated:

> U.S.S.G. § 4A1.2, App. note 1, makes clear that a prior offense that is part of the relevant conduct as defined in U.S.S.G. § 1B1.3 is not a prior offense and should not be counted as part of the criminal history. [. . .] Relevant conduct includes all conduct that is "part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2). The factors to be considered in determining a common scheme or plan are "common victims, common accomplices, common purpose, or similar modus operandi." U.S.S.G. § 1B1.3, App. note 9(A). Factors in determining the same course of conduct are "the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses." [*Id*. at App. note 9(B).]

> Applying these factors to this case supports [the defendant's] argument. The charged conspiracy and the paraphernalia charge were both drug related offenses, so they have the same victim, i.e., society. There are common accomplices, as

shown by the statements in Paragraph 42 of the [PSIR[4]]. The common purpose was the distribution and use of marijuana, at least in the 1997 time period. The paraphernalia charge involved the personal use of marijuana. In a conspiracy case, personal use of marijuana is part of the relevant conduct. [*See, United States v. Weiland*, 284 F.3d 878 (8th Cir. 2002)].

As to the same course of conduct, the charged conspiracy and the paraphernalia charge are similar in that they are drug related offenses involving marijuana in the Mason City area. Both are part of an ongoing offense involving the same controlled substance and the same people. The paraphernalia offense also occurred during the time of the relevant conduct as shown by paragraph 42 of the [PSIR]. It does not matter that the indictment only charges the time period between 1999 and 2002. Relevant conduct includes conduct not charged in the indictment. [*See* U.S.S.G. § 1B1.3; *United States v. Salinas*, 1995 U.S. App. LEXIS 9416 (8th Cir. 1995)].

Thus, the drug paraphernalia possession was part and parcel of the conduct charged in this case under the standards of relevant conduct. It would be anomalous, indeed, if, for example, [the defendant] had been convicted of a felony drug charge in 1997

---

[4] Paragraph 42 of the defendant's PSIR, in relevant part, provides:
[D]iscovery file materials show that the criminal conduct in this case began in the mid-1990s. Further, discovery shows that the defendant, a resident of Mason City, Iowa, was involved in the distribution of marijuana by at least as early as 1996. The defendant obtained marijuana from a variety of sources for resale, including [L.K.] in Minneapolis. [A.W.] was a distributor for [L.K.] who would supply the defendant. [A.W.] became an associate of [M.R.] as well and began to supply him with quantities of marijuana. [A.W.] was arrested in the late 1990s on a drug trip to Arizona, where he was caught with $20,000 cash. Once [A.W.] was arrested, [L.K.] started dealing directly with [M.R.].

that would not be counted as criminal history, but a drug-related city ordinance violation would add to his criminal history and increase his sentence.

On January 28, 2004, the court held a sentencing hearing. At such hearing, the court addressed two objections, that is, the safety-valve eligibility objection and the role in the offense objection. With regard to the former objection, defense counsel argued that the PSIR's inclusion of the 1997 conviction for possession of drug paraphernalia as part of the defendant's criminal history is the only thing that prevents the defendant from being safety-valve eligible. In support of his argument that the 1997 conviction does not qualify as part of the defendant's criminal history, defense counsel relied on the sentencing memorandum he prepared and stated:

[T]he [PSIR] itself, at Paragraph 42, in setting out what the offense conduct is, talks about [the defendant's] conduct in the mid '90s and especially by 1996. So the offense conduct of the drug paraphernalia charge in 1997 would be well within what the [PSIR] states is the period of the offense conduct.

[T]he fact that the indictment charges the conspiracy running from 1999 to 2002 does not really answer the question of what's relevant conduct. The court has stated relevant conduct can and does include the conduct that's not part of the charged offense. It's all similar conduct, which would involve in this case the same–many of the same participants, the same type of controlled substance, the same geographical area, Mason City, and it's all part and parcel of the same conduct. And for most of the time period of the conspiracy, [the defendant's] involvement was with marijuana. It was only toward the end that [M.R.] was getting methamphetamine from [L.K.] and was having [the defendant] drive some of it from Minneapolis down to Mason City. And so I think–and it's important too, I think, that the paraphernalia charge involved marijuana, involved a marijuana pipe, and the courts have said that even

though that may have involved simple possession, that in a conspiracy case, where you're talking about a quantity of controlled substance, that personal use involvement is part of the relevant conduct.

[G]iven the nature of the conspiracy here, the length of it, the time period, that this certainly does come within the relevant conduct. And even though in this particular case we didn't need to use any aspect of that paraphernalia charge in order to determine [the defendant's] sentence, I don't think that makes it not relevant conduct. Relevant conduct is what it is by virtue of guideline 1B1.3. And it certainly could have been admitted at trial to show [the defendant's] involvement with marijuana during that period of time in-in order to show the extent and nature of the conspiracy, and so certainly I think it does come within the nature of relevant conduct.

Defense counsel then attempted to distinguish the cases that the government relied on and discussed in its sentencing memorandum. In response, the government reiterated several of the points that it made in its sentencing memorandum and stated:

Paragraph 42 of the [PSIR] indicates [. . .] that the defendant obtained marijuana from a variety of sources, including people involved in this conspiracy, but not limited to those people.

The defendant's made no showing before the court at this point that the marijuana he used with the paraphernalia that he was caught with in 1997 even came from anybody connected with this conspiracy. It could have come from any number of sources that he had back in 1997, could have been completely unrelated to the people involved in this conspiracy.

Regardless of that, the defendant-the defendant's conviction in this case was for possession of marijuana paraphernalia, not marijuana itself. The reason that you count quantities of personal use marijuana in a conspiracy case is because the court is entitled under those circumstances to count that quantity in determining the offense conduct in that case. In

this case, you can't take into account or anywhere calculate the possession of paraphernalia to determine an appropriate offense level for this offense.

More fundamentally, there's been no showing at all in this case how the defendant's possession of [drug paraphernalia] was in any way connected with the conspiracy to distribute marijuana, methamphetamine, ecstasy, ice methamphetamine, and the other drugs he was involved with. Possession of paraphernalia is used for your own personal pleasure of smoking marijuana. Possession of it didn't further the conspiracy in any way. There's been no showing that he was somehow required to smoke marijuana to be admitted into the membership in this conspiracy. As the court pointed out, in fact, he was a smoker of marijuana before he even got connected to this conspiracy.

If you look at the factors that the government set out in its sentencing memorandum in this case, this is outside the charged conduct. I disagree–and I would pretty much guarantee, if we had taken this case to trial, [defense counsel] would have disagreed–that I could have brought in his prior possession of marijuana paraphernalia as part of the offense conduct in this case. It might have been 404(b) evidence, maybe, and even that would have been a stretch.

Having listened to both parties, the court summarized the arguments, the relevant guidelines and the relevant law. The court then made findings regarding several factors, including whether temporal and geographical proximity existed, whether a common scheme or plan existed and whether the government used the conviction for possession of drug paraphernalia to prove the conspiracy. Ultimately, the court overruled the defendant's safety-valve eligibility objection and sentenced the defendant to 188 months

imprisonment and 5 years supervised release.[5] On January 29, 2004, judgment entered against the defendant. The defendant did not file a notice of appeal.

On January 21, 2005, the defendant filed the instant motion. In his 28 U.S.C. § 2255 motion, the defendant challenges his conviction and resulting sentence on one ground. Specifically, the defendant claims counsel provided ineffective assistance when he failed to properly object to the criminal history computation; the defendant believes counsel failed to articulate all the reasons why his prior conviction for possessing drug paraphernalia should have been included as relevant conduct. To support such claim, the defendant relies on *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

The court now turns to consider the defendant's motion pursuant to 28 U.S.C. § 2255.

## II. ANALYSIS

### A. Standards Applicable to Motion Pursuant to 28 U.S.C. § 2255

28 U.S.C. § 2255 allows a prisoner in custody under sentence of a federal court to move the sentencing court to vacate, set aside or correct a sentence. To obtain relief pursuant to 28 U.S.C. § 2255, a federal prisoner must establish: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose such sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) his sentence is otherwise subject to collateral attack.

---

[5] Relying on the United States Sentencing Guidelines, the court imposed a 188-month term. The court sentenced the defendant based on a total offense level of 35 and a criminal history category of II. Before reaching the total offense level of 35, the court determined: 1) the base offense level should be 38 pursuant to U.S.S.G. § 2D1.1; and 2) three levels should be subtracted pursuant to U.S.S.G. § 3E1.1. Utilizing U.S.S.G. § 4A1.1, the court determined the defendant's criminal history to be II.

*See Hill v. United States*, 368 U.S. 424, 426-27, 82 S. Ct. 468, 7 L. Ed. 2d 417 (1962) (citing 28 U.S.C. § 2255).

Although it appears to be broad, 28 U.S.C. § 2255 does not provide a remedy for "all claimed errors in conviction and sentencing." *United States v. Addonizio*, 442 U.S. 178, 185, 99 S. Ct. 2235, 60 L. Ed. 2d 805 (1979). Rather, 28 U.S.C. § 2255 is intended to redress only "fundamental defect[s] which inherently [result] in a complete miscarriage of justice" and "omission[s] inconsistent with the rudimentary demands of fair procedure." *Hill*, 368 U.S. at 428. *See also United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996) ("Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised for the first time on direct appeal and, if uncorrected, would result in a complete miscarriage of justice.") (citing *Poor Thunder v. United States*, 810 F.2d 817, 821 (8th Cir. 1987)). A collateral challenge under 28 U.S.C. § 2255 is not interchangeable or substitutable for a direct appeal. *See United States v. Frady*, 456 U.S. 152, 165, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1982) (making clear a motion pursuant to 28 U.S.C. § 2255 will not be allowed to do service for an appeal). Consequently, "[a]n error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment." *Id.* (internal quotation marks and citation omitted).

In addition, defendants ordinarily are precluded from asserting claims they failed to raise on direct appeal. *See McNeal v. United States*, 249 F.3d 747, 749 (8th Cir. 2001). "A defendant who has procedurally defaulted a claim by failing to raise it on direct review may raise the claim in a [28 U.S.C. §] 2255 proceeding only by demonstrating cause for the default and prejudice or actual innocence." *Id.* (citing *Bousley v. United States*, 523 U.S. 614, 622, 118 S. Ct. 1604, 140 L. Ed. 2d 828 (1998)). *See also Massaro v. United States*, 538 U.S. 500, 504, 123 S. Ct. 1690, 155 L. Ed. 2d 714 (2003) ("[T]he general

rule [is] that claims not raised on direct appeal may not be raised on collateral review unless the [defendant] shows cause and prejudice."). "'[C]ause' under the cause and prejudice test must be something *external* to the [defendant], something that cannot be fairly attributed to him." *Coleman v. Thompson*, 501 U.S. 722, 753, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991) (emphasis in original). If a defendant fails to show cause, a court need not consider whether actual prejudice exists. *McCleskey v. Zant*, 499 U.S. 467, 501, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991). Actual innocence under the actual innocence test "means factual innocence, not mere legal insufficiency." *Bousley*, 523 U.S. at 623-24. *See also McNeal*, 249 F.3d at 749 ("[A] defendant must show factual innocence, not simply legal insufficiency of evidence to support a conviction.").[6]

## B. The Defendant's Claim[7]

### 1. Ineffective Assistance of Counsel

The Sixth Amendment to the United States Constitution provides in pertinent part that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his [or her] defen[s]e." U.S. Const., Amend. VI. Furthermore,

---

[6] The procedural default rule applies to a conviction obtained through trial or through the entry of a guilty plea. *See United States v. Cain*, 134 F.3d 1345, 1352 (8th Cir. 1998); *Walker v. United States*, 115 F.3d 603, 605 (8th Cir. 1997); *Matthews v. United States*, 114 F.3d 112, 113 (8th Cir. 1997); *Thomas v. United States*, 112 F.3d 365, 366 (8th Cir. 1997); *Reid v. United States*, 976 F.2d 446, 448 (8th Cir. 1992).

[7] The court notes that the defendant does not offer any explanation for why he failed to raise a claim regarding the computation of his criminal history on direct appeal. *See generally Watts v. Norris*, 356 F.3d 937, 941 (8th Cir. 2004) (stating procedural default can be overcome if a defendant demonstrates cause for the default and actual prejudice resulting from the abandonment of the claim). Nonetheless, the court assumes the defendant believes counsel should have filed a notice of appeal and argued that the court erred when it calculated his criminal history. *Id*. ("Ineffective assistance of counsel can be cause, but this theory itself must [be] presented.").

criminal defendants have a constitutional right to effective assistance of counsel in their first appeal. *Evitts v. Lucey*, 469 U.S. 387, 393-95, 105 S. Ct. 830, 83 L. Ed. 2d 821 (1985); *Douglas v. California*, 372 U.S. 353, 356-57, 83 S. Ct. 814, 9 L. Ed. 2d 811 (1963).

The Sixth Amendment right to effective counsel is clearly established. *See Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). In *Strickland*, the United States Supreme Court explained that a violation of that right has two components:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id.* at 687. *See also Williams v. Taylor*, 529 U.S. 362, 390, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000) (reasserting *Strickland* standard). Thus, *Strickland* requires a showing of both deficient performance and prejudice. However, "a court deciding an ineffective assistance claim need not address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697. "If it is easier to dispose of an ineffectiveness claim on grounds of lack of sufficient prejudice, . . . that course should be followed." *Id. See also United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996) ("[A court] need not address the reasonableness of the attorney's behavior if the movant cannot prove prejudice.").

To establish unreasonably deficient performance, a "defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*,

466 U.S. at 688. The "reasonableness of counsel's challenged conduct [must be reviewed] on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690. There is a strong presumption of competence and reasonable professional judgment. *Id.* *See also United States v. Taylor*, 258 F.3d 815, 818 (8th Cir. 2001) (operating on the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance") (quoting *Strickland*, 466 U.S. at 689); *Sanders v. Trickey*, 875 F.2d 205, 210 (8th Cir. 1989) (broad latitude to make strategic and tactical choices regarding the appropriate action to take or refrain from taking is afforded when acting in a representative capacity) (citing *Strickland*, 466 U.S. at 694). In sum, the court must "determine whether, in light of all the circumstances, the identified acts or omissions were outside the range of professionally competent assistance." *Strickland*, 466 U.S. at 690.

To establish prejudice, "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id*. at 693. Rather, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. In other words, "the question is whether there is a reasonable probability that, absent those errors, the fact finder would have had a reasonable doubt respecting guilt." *Id*. at 695. In answering that question, the court "must consider the totality of the evidence before the judge or jury." *Id*.

Here, the defendant takes issue with the fact that the PSIR did not assess a criminal history point for his 2001 possession of marijuana conviction but it did assess a criminal history point for his 1997 possession of drug paraphernalia conviction. In addition, the defendant states the following:

[T]he 1997 state paraphernalia charge should not have been counted in his criminal history score because it was conduct associated with the instant offense, rather than a 'prior sentence' as defined in the guidelines. [. . .]

"Conduct that is part of the current offense should be counted as relevant conduct rather than as a prior sentence, conduct is not part of the instant offense when it is a severable distinct offense." United States v. Blumberg, 961 F.2d 787, 792 (8th Cir. 1992). "Factors useful in determining whether the two offenses are severable and distinct are temporal and geographical proximity, common victims, common scheme, charge in the indictment, and whether the prior conviction is used to prove the instant offense." United States v. Stone, 325 F.3d 1030, 1032 (8th Cir. 2003). Other factors that may be considered include similarity in crimes and whether the crimes were uncovered as part of a single investigation. United States v. Weiland, 284 F.3d 878, 881 (8th Cir. 2002). Whether prior criminal conduct is related is a factual inquiry. Id. at 882.

The temporal boundaries of the conspiracy were never defined. The record shows that [the defendant] possessed, possessed with intent, and conspired to possess with intent to distribute marijuana at the time of his arrest on the instant offense, at the time of his state charge for possession of marijuana, and at least as far back as the state paraphernalia charge. This is an uninterrupted "same course of conduct" as defined in Application note 9 under U.S.S.G. § 1B1.3 which occurred on a regular basis with a high degree of similarity and no intervening interruption. The discovery information compiled provides a direct link between one of [the defendant's] suppliers in 1997 and his co-defendant in the instant offense. It is more likely that the conspiracy had begun at that time than not.

Geographically, the two were identical. In fact, [the defendant] was arrested at the same intersection in 1997 as he was in the instant offense.

U.S.S.G. § 1B1.3 App. Note 9 defines common scheme or plan as an offense which has, among other things, "common purpose and similar modus operandi." Possession and use of marijuana is but one aspect of possession with intent to distribute, a common purpose in 1997 and continuing through January 2003. Further, all of this activity was discovered and catalogued by authorities, compiled as part of the investigation and made available in the discovery and other documents for the instant offense.

Missing, and made significant by its absence, is the required factual inquiry which should have been done by [the defendant's] counsel at sentencing. The objection that was raised was ineffectively articulated. This can not be viewed as a strategic approach and must be attached to performance. The response by the government was not subjected to meaningful adversarial testing by [the defendant's] counsel. Perhaps most importantly, the points regarding conspiracy timeline, common scheme, and same course of conduct were not raised, even though all of the information to do so had been made available to counsel well in advance of sentencing.

The criminal history point assessed for this state charge had the effect of taking [the defendant] from criminal history category I to criminal history category II. [The defendant] was sentenced to 188 months, the bottom of the applicable sentencing range, 20 months more than he would have been sentenced to at the low end of the applicable range in criminal history category I.[8]

---

[8] Based on a total offense level of 35 and a criminal history category of I, the defendant proposes a guideline range of 168 to 210 months.

> Since [the defendant's] counsel failed to challenge the
> additional criminal history point based on a proper
> argumentative foundation, and since the omission clearly
> prejudiced [the defendant], this court should find that counsel
> was ineffective under Strickland and that counsel's omissions
> resulted in a miscarriage of justice.

Clearly, counsel's performance met or exceeded a professional standard of reasonableness. As the defendant acknowledges, counsel objected to several aspects of the PSIR and filed a sentencing memorandum. In the sentencing memorandum, counsel raised essentially all of the assertions that the defendant now makes. At the sentencing hearing, counsel zealously represented the defendant. Despite counsel's avid efforts, the court determined that U.S.S.G. § 2D1.1(b)(6) did not apply to the defendant and concluded that the PSIR correctly calculated the defendant's criminal history. More specifically, the court found during the sentencing phase of this case that the defendant's actions in this case constitute a distinct and severable offense from his actions in the prior case. *See United States v. Davidson*, 195 F.3d 402, 409 (8th Cir. 1999) (reiterating proper standard). The defendant's state court conviction for possession of drug paraphernalia did not qualify as relevant conduct to the conspiracy, that is, distributing methamphetamine, cocaine, marijuana and ecstacy. Because the distribution-related activities that resulted in the defendant's underlying conviction differed substantially from the possession-related activities that resulted in the defendant's state conviction, the possession activity could not be said to be in furtherance of the distribution offense. Given the record, the court finds the assistance provided by counsel surpassed the "professionally competent assistance" that is required by the Sixth Amendment. *Strickland*, 466 U.S. at 689-90.

Even if counsel raised the facts that the defendant now deems relevant, the result remains the same, that is, criminal history category I does not apply to the defendant.

With respect to the relevant factors, there is no question that the victims of the prior offense and the instant offense are distinct. The victim of the possession of drug paraphernalia conviction is the defendant (as a drug user) whereas the victims of the conspiracy to distribute methamphetamine, cocaine, marijuana and ecstacy are the purchasers of those drugs through transactions facilitated by the defendant.[9] Further, the defendant possessed personal drug use paraphernalia approximately one and one-half years before the beginning date of the charged drug conspiracy. The prior offense occurred well before the commission of the offense of conviction. Additionally, the defendant possessed personal drug use paraphernalia in Cerro Gordo County, Iowa while the charged drug conspiracy involved the southwest part of the United States, Minneapolis, Minnesota, Cerro Gordo County, Iowa and other locations in Iowa. Moreover, the defendant's plan and intent in entering into a conspiracy to distribute methamphetamine, cocaine, marijuana and ecstacy differs entirely from the plan and intent accompanying the personal use of drugs. Simple possession of drug paraphernalia consistent with personal use is not in itself preparation or furtherance of a conspiracy to distribute methamphetamine, cocaine, marijuana and ecstacy. Nothing connected the possession offense with the conspiracy offense. Finally, the government never included possession of drug paraphernalia as part of the indictment, and the possession related activity never became part of the conduct of conspiring to distribute to which the defendant pleaded guilty. The government never used the prior conviction to prove the instant offense. Thus, any objection regarding the use

---

[9] With respect to other victims, the court notes that several co-conspirators beat and tortured an individual.

of the defendant's possession conviction for criminal history purposes would not have been
successful if counsel had presented it as the defendant desired.[10]

---

[10] The court notes that the conclusion regarding the defendant's criminal history is
consistent with circuit precedent. *See United States v. Periz-Guerrero*, 334 F.3d 778, 784
(8th Cir. 2003) ("Because the [prior conviction in California for aiding and abetting the
importation of marijuana] lacked geographical proximity to the conspiracy at issue here,
involved a different drug than the one whose distribution was the object of the conspiracy,
and involved different coconspirators, we conclude that the district court did not err in
treating the California conviction as a separate and distinct offense and by using the
conviction to determine [defendant's] criminal history"); *United States v. Nastase*, 329
F.3d 622, 623-24 (8th Cir. 2003) (holding no clear error in district court's finding that
defendant failed to prove a connection between the two marijuana convictions and the
methamphetamine conspiracy) (stating it may be true "that individuals who use marijuana
(and presumably other drugs as well) will often distribute drugs to pay for their habit",
"but this alone does not make the possession of marijuana part of the conspiracy to
distribute offense"); *United States v. Stone*, 325 F.3d 1030, 1032 (8th Cir. 2003)
(determining the district court did not clearly err in finding defendant's convictions for
conspiracy to manufacture and distribute methamphetamine and for driving while
intoxicated on marijuana were severable and distinct); *United States v. Weiland*, 284 F.3d
878, 883 (8th Cir. 2002) (concluding district court did not abuse its discretion by treating
defendant's 1998 conviction for marijuana possession as relevant conduct because such
conviction was part of the same criminal scheme as the conspiracy to distribute
methamphetamine, cocaine, LSD, psilocin, mushrooms and marijuana that occurred
between about 1996 and 1999); *United States v. Patrick*, 117 F.3d 375, 377-78 (8th Cir.
1997) (concluding district court did not err in overruling defendant's objection to his
criminal history calculation because the "prior offense consisted of faxing threats from
Arizona to the victim six and eight months before he wrote and sent the two letters giving
rise to the present prosecution"); *United States v. Davidson*, 195 F.3d 402, 408-09 (8th
Cir. 1999) (holding conduct underlying defendant's prior convictions for possession of
methamphetamine is not relevant conduct to the conspiracy to manufacture
methamphetamine, and the district court did not err in considering the prior convictions
in her criminal history category); *United States v. Loveless*, 139 F.3d 587, 594-95 (8th
Cir. 1998) (finding no clear error in the district court's determination that defendant's
California state conviction for possessing methamphetamine and marijuana with the intent
(continued...)

In addition, the court finds counsel's performance did not prejudice the defendant's defense. *Id*. at 692-94. The defendant failed to show that there is a reasonable probability that the court would have found his criminal history category to be I rather than II had counsel argued the way the defendant now desires. The alleged deficiency in counsel's performance did not prejudice the defendant because there is no "reasonable probability that . . . the result of the proceeding would have been different." *Id*. at 694.[11]

---

[10](…continued)
to distribute should be included as part of his criminal history); *United States v. Torres-Diaz*, 60 F.3d 445, 448-49 (8th Cir. 1995) (concluding the district court did not clearly err when it concluded that defendant's distribution activities did not constitute relevant conduct with respect to his stash house offense and, therefore, properly considered the sentences stemming from the distribution activities to be prior sentences under U.S.S.G. § 4A1.1); *United States v. Copeland*, 45 F.3d 254, 256 (8th Cir. 1995) (finding no clear error, given that the firearm possession involved a different firearm, that this incident was not charged in the indictment as an act in furtherance of the drug conspiracy, and that it was not part of the conduct of conspiring to distribute crack cocaine to which Shields pleaded guilty); *United States v. Blumberg*, 961 F.2d 787, 792 (8th Cir. 1992) (determining district court did not err when it found defendant's conduct in a 1973 burglary was not part of the same course of conduct or common scheme or plan as the 1990 conspiracy and transportation offenses because the burglary occurred before the conduct charged in the indictment, targeted a different victim and involved a different accomplice).

[11] The court notes that, if it determined U.S.S.G. § 2D1.1(b)(6) applied to the defendant, the total offense level would have been 33 and the criminal history category would have been I. Such total offense level and criminal history category results in a sentencing range of 135 to 168 months imprisonment. This is the position or argument that counsel advocated. The defendant appears to have abandoned the safety-valve eligibility argument and merely advocates a total offense level of 38 and a criminal history category of I because he believes he would have been sentenced at the low end of the applicable range, that is 168 to 210 months imprisonment. The defendant's 188 month sentence falls within the 168 to 210 month range which he now advocates, and the likelihood that the court would have sentenced the defendant at the bottom of the range is
(continued…)

In sum, the defendant's claim fails for lack of proof to satisfy the two-prong test established in *Strickland*. The instant ineffective assistance of counsel claim fails because the defendant failed to overcome the strong presumption that the conduct of counsel fell within a wide range of reasonable professional assistance or show that any deficiencies in counsel's performance prejudiced his defense. Accordingly, the defendant is not entitled to relief based on 28 U.S.C. § 2255.

## C. Certificate of Appealability

In a 28 U.S.C. § 2255 proceeding before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held. *See* 28 U.S.C. § 2253(a). Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. *See* 28 U.S.C. § 2253(c)(1)(A). A district court possesses the authority to issue certificates of appealability under 28 U.S.C. § 2253(c) and Fed. R. App. P. 22(b). *See Tiedeman v. Benson*, 122 F.3d 518, 522 (8th Cir. 1997). Under 28 U.S.C. § 2253(c)(2), a certificate of appealability may issue only if a defendant has made a substantial showing of the denial of a constitutional right. *See Miller-El v. Cockrell*, 537 U.S. 322, 335-36, 123 S. Ct. 1029, 1039, 154 L. Ed. 2d 931 (2003); *Garrett v. United States*, 211 F.3d 1075, 1076-77 (8th Cir. 2000); *Carter v. Hopkins*, 151 F.3d 872, 873-74 (8th Cir. 1998); *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997); *Tiedeman*, 122 F.3d at 523. To make such a showing, the

---

[11](…continued)
remote. *Cf. Torres-Diaz*, 60 F.3d 445, 449 ("'If the sentence falls within the guideline range urged by the [defendant] and if it is clear that the sentencing court would have imposed the same sentence regardless of whether the appellant's argument for a lower guideline range ultimately prevailed, then the matter is not reviewable and will not be remanded for resentencing.'" (quoting United States v. Simpkins, 953 F.2d 443, 446 (8th Cir. 1992)).

issues must be debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings. *Cox*, 133 F.3d at 569 (citing *Flieger v. Delo*, 16 F.3d 878, 882-83 (8th Cir. 1994)). *See also Miller-El*, 537 U.S. at 335-36 (reiterating standard).

Courts reject constitutional claims either on the merits or on procedural grounds. "'[W]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy [28 U.S.C.] § 2253(c) is straightforward: the [defendant] must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Miller-El*, 537 U.S. at 338 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000)). When a federal habeas petition is dismissed on procedural grounds without reaching the underlying constitutional claim, "the [defendant must show], at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *See Slack*, 529 U.S. at 484.

Having thoroughly reviewed the record in this case, the court finds the defendant failed to make the requisite "substantial showing" with respect to the claim he raised in his 28 U.S.C. § 2255 motion. *See* 28 U.S.C. § 2253(c)(2); Fed. R. App. P. 22(b). Because he does not present questions of substance for appellate review, there is no reason to grant a certificate of appealability. Accordingly, a certificate of appealability shall be denied. If he desires further review of his 28 U.S.C. § 2255 motion, the defendant may request issuance of the certificate of appealability by a circuit judge of the Eighth Circuit Court of Appeals in accordance with *Tiedeman*, 122 F.3d at 520-22.

**IT IS THEREFORE ORDERED**:

1) The defendant's 28 U.S.C. § 2255 motion (Docket No. 106) is DENIED.

2) A certificate of appealability is DENIED.

**DATED** this 17th day of January, 2006.

LINDA R. READE
JUDGE, U. S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA